Filed 9/20/21  In re Clyde V. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CLYDE V. et al., Persons Coming Under the Juvenile Court Law. | B310577 |
| | (Los Angeles County Super. Ct. No. 20LJJP00827A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| CRISTIAN V., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Juvenile Court Referee. Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

———————

Cristian V., the presumed father of four-year-old Clyde V. and nine-month-old Bonnie V., appeals the juvenile court's jurisdiction finding sustaining an allegation of ongoing substance abuse and the court's disposition orders requiring him to participate in a drug and alcohol treatment program and a domestic violence program. The children's mother, Cristian's wife Jessica V., who used fentanyl during her pregnancy with Bonnie, has not appealed the jurisdiction findings and disposition orders removing the two children from their parents' custody. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Past Child Welfare Issues*

Both Cristian and Jessica have extensive child welfare histories involving Clyde and children from prior relationships. As pertinent to this appeal, Cristian's son Justin V. was declared a dependent child of the court in 2009 due to Cristian's substance abuse and domestic violence between Cristian and Justin's mother and paternal grandmother. When jurisdiction terminated in 2010, Justin's mother was awarded sole physical custody of the child; and Cristian was restricted to monitored visitation.

2

In September 2018 Clyde was declared a dependent child of the court due to Cristian's and Jessica's substance abuse.[1]  The juvenile court found that Cristian had an eight-year history of drug abuse and was at that time a current user of heroin and prescription medication, including Xanax.  The referral that initiated this proceeding reported Cristian had been driving at high speeds while under the influence of heroin and Xanax with Clyde and Jessica in the car with him.  This proceeding terminated in September 2019 with a juvenile custody order awarding Jessica sole physical and legal custody of Clyde.[2]  Cristian's contact with Clyde was restricted to monitored visitation.

2. *Clyde's Criminal History*

Clyde's criminal history includes convictions for inflicting corporal injury on a spouse or cohabitant and child cruelty, as well as a variety of drug charges.  He was in prison in September 2019 when jurisdiction in Clyde's prior dependency case terminated.

---

[1]  Jessica's two daughters (Clyde's half-sisters) Angelin V., and Kimberly V., were also declared dependents of the court in this dependency proceeding.  The juvenile court found Jessica had a history of illicit drug abuse and was a current user of cocaine.

[2]  The juvenile court had terminated its jurisdiction over Angelin and Kimberly a year earlier with a juvenile custody order awarding their father sole physical and legal custody and prohibiting Cristian from having any contact with the children.

### 3. *Initiation of the Current Dependency Proceedings*

In December 2020 the Los Angeles County Department of Children and Family Services (Department) received a report of general neglect by Jessica following Bonnie's birth. The referral stated Jessica had a history of opioid abuse and had been hospitalized with opioid withdrawal the prior month. Jessica had admitted using painkillers that had not been prescribed for her. The referral also indicated Cristian had to be escorted from the hospital following an argument with Jessica.

In an interview with a Department social worker, Jessica explained she had been in a car accident in February 2020 and injured her back. A friend had given her the pain pills, which Jessica said she thought were like Tylenol and would not be harmful to take during the pregnancy.

On December 29, 2020 the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling),[3] alleging Clyde and Bonnie were at substantial risk of serious physical harm because of Jessica's history of substance abuse and her current abuse of fentanyl, which had not been prescribed for her and which she had used during her pregnancy with Bonnie. The petition further alleged that Clyde was a prior dependent of the juvenile court due to Jessica's substance abuse. In separate counts pursuant to subdivisions (b) and (j) as to both Cristian and Jessica, the petition alleged Cristian had a history of illicit drug use including heroin and prescription medication that rendered him incapable of providing regular care for the children; Clyde and Justin were prior dependents of the court due to Cristian's

---

[3] Statutory references are to this code.

4

substance abuse; Jessica failed to protect Clyde and Bonnie by allowing Cristian to have unlimited access to them even though Jessica knew of Cristian's substance abuse; and Cristian and Jessica had violated the juvenile court's September 2019 custody orders, which restricted Cristian to monitored visits with Clyde.

In its detention report prepared December 28, 2020, the Department stated the assigned nurse at the hospital following Bonnie's birth indicated both Jessica and Bonnie had tested negative for drugs following delivery and mother and child appeared to be bonding well. The facility's social worker described the incident during which Cristian was ordered to leave the hospital as "an altercation."

In an interview on December 14, 2020 Jessica said Cristian had been kicked out of the hospital because he had become upset about her use of fentanyl. She insisted she had a healthy relationship with Cristian and there was no history of domestic violence. In an interview on December 22, 2020 Cristian claimed he was unaware of Jessica's drug use until recently. Asked about his criminal history, Cristian acknowledged he had been incarcerated for "child cruelty and a battering charge" and said he had completed his sentence. He explained he had separated from Jessica "because he knows he is the issue."

In a last minute information for the court filed the day of the detention hearing, the Department reported Cristian had contacted the Department, asked for the reasons for the detention and stated he would like the children released to his care. The supervising children's social worker explained the Department's concerns about Jessica's substance abuse and a report that Cristian was living with Jessica and the children in the paternal grandmother's home notwithstanding the court

5

order restricting his access to Clyde. Cristian denied living with the paternal grandmother but claimed not to know the address where he was staying. In a subsequent conversation with the social worker Cristian insisted he and Jessica were separated, he had no plans to reconcile with her, and they do not communicate with each other. He also stated the paternal grandmother monitored his visits with Clyde in compliance with the court's order.

At the detention hearing on December 31, 2020 the court found a prima facie case existed that Clyde and Bonnie were persons described by section 300 and ordered the children detained, vesting temporary custody with the Department. Cristian requested a no-time-waiver jurisdiction hearing pursuant to section 334.

4. *The Jurisdiction and Disposition Hearing*

In a jurisdiction and disposition report filed January 15, 2021 the Department summarized information contained in its detention report and indicated neither Cristian nor Jessica had responded to the Department's requests for further interviews. The children's caregiver reported the children were adjusting well. However, Cristian called Clyde multiple times every day. When they spoke, Cristian would cry hysterically, which caused the four-year-old to cry. Because of the frequency of Cristian's calls and his calling as late as 1:30 a.m., the caregiver blocked his number.

The Department opined that Clyde and Bonnie were at high risk for future abuse and neglect "[d]ue to both parents['] ongoing history of illicit substance use/abuse, ongoing and unresolved domestic violence often times within the presence of the minor children, and mother's decision to continue to remain

6

in a relationship with father Cristian."  The Department recommended the children be declared dependents of the court and remain in protective custody with family reunification services ordered for Cristian and Jessica.

Both Jessica and Cristian testified at the combined jurisdiction and disposition hearing on January 22, 2021.  Jessica testified she and Cristian married in June 2018 and he went to jail on a domestic violence charge some time thereafter.  In inconsistent and confusing testimony, Jessica stated she had not had any in-person contact with Cristian in 2020, did not remember whether she had any in-person contact with him, attempted to "plea the 5th" in response to questions about her contact with Cristian in 2020 and admitted Cristian was the father of Bonnie, which necessarily required some in-person contact in the months prior to her birth.  Jessica testified she only used fentanyl for one week, contradicting her statement to the social worker she had used it for approximately two months.

Cristian testified he was released from prison in March 2020 (approximately nine months before Bonnie's birth) and had never lived with Jessica.  He said he attended a drug rehabilitation program in Mexico for three months in 2012 or 2013 and had not used drugs since then.  He also testified he had participated in a domestic violence program in 2015 or 2016 and completed a parenting program while incarcerated.  He denied any domestic violence with Jessica.  He described the incident at the hospital in November 2019 as a discussion and said he left the facility voluntarily.

Counsel for Jessica and for Cristian asked the court to dismiss the petition.  The Department, joined by minors' counsel, asked the court to sustain the petition.

5. *The Court's Findings and Disposition Order*

The juvenile court sustained the petition as pleaded, found Clyde and Bonnie were persons described by section 300, declared each of them dependents of the court and ordered them suitably placed under the supervision of the Department.[4]  The court explained the basis for its findings:  "Unfortunately, these folks do have a long history with the dependency court going back years.  [Minors' counsel] stated it best.  Neither Mother nor Father were candid with the court, and actually just lied to the court. . . .  As to Mother's use, this was not a one-time use of fentanyl for Mother.  Mother in the detention report has indicated she was using for at least two months. . . .  If I was to believe her testimony, she thought it was like a Tylenol, and I don't buy that, either.  Neither were credible.  Father was asked to leave the hospital in November when Mom went there to detox from the drug. . . .  He was also asked to leave at the birth of the child. . . .  So there is ongoing domestic violence. . . .  Father, unfortunately, does have a very long criminal history of violence, along with substance abuse. . . .  Back as far as 2013 he had corporal injury to a spouse, general criminality, a burglary in 2016, and inflicting corporal injury to a spouse, 2017. . . .  I think it's 2017, child cruelty, possibly deaths or injury.  That's the event of him driving at reckless speeds under the influence of heroin and Xanax.  He was convicted."  The court added the prior dependency case involving Clyde had closed with custody awarded to Jessica "because [the court] thought Father was going to be in prison for a period of time up to five years."

---

[4]     At the hearing Cristian's counsel asked the court to release the children to Cristian if it did not dismiss the petition.  Cristian

The court ordered family reunification services for Jessica and Cristian. As to Cristian, the court ordered a full drug and alcohol program with aftercare, a 52-week domestic violence program, anger management and individual counseling to address anger and control issues. Visitation was to be monitored, and Jessica was ordered not to be present during Cristian's visits. Cristian's counsel asked the court to excuse Cristian from participating in drug rehabilitation and the domestic violence program if Cristian could verify his completion of similar programs. The court denied the request, explaining, even if he had completed those programs in the past, Cristian's subsequent convictions for drug-related offenses and domestic violence belied their effectiveness.

Cristian filed a timely notice of appeal.

## DISCUSSION

### 1. *Cristian's Challenge to the Jurisdiction Finding Is Not Justiciable*

Cristian does not challenge the juvenile court's exercise of jurisdiction over Clyde and Bonnie based on the sustained allegations that Jessica had a history of substance abuse and was a current abuser of fentanyl, which rendered her unable to provide regular care for the children, endangered their health and safety, and placed them at substantial risk of serious physical harm within the meaning of section 300, subdivision (b). Nor does he challenge the court's decision to order the children suitably placed. As a result, even if we were to strike the jurisdiction finding as to Cristian, that decision would not affect

does not argue on appeal the court erred in ordering out-of-home placements for Clyde and Bonnie.

the juvenile court's jurisdiction in this matter (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; "'"the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent"'"]; see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Briana V.* (2015) 236 Cal.App.4th 297, 310-311) or limit the court's authority to make all orders necessary to protect the children:  The juvenile court's "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with that discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings."  (*In re K.T.* (2020) 49 Cal.App.5th 20, 25; accord, *In re Briana V.*, at p. 311 ["The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition.  [Citation.]  In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"]; *In re I.A.*, at p. 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"]; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].)

As Cristian correctly argues, in limited circumstances reviewing courts have exercised their discretion to consider an appeal challenging a jurisdiction finding despite the existence of an independent and unchallenged ground for jurisdiction when

10

the jurisdiction findings "serve[ ] as the basis for dispositional orders that are also challenged on appeal," "could be prejudicial to the appellant or could impact the current or any future dependency proceedings" or "could have consequences for the appellant beyond jurisdiction." (*In re J.C.* (2014) 233 Cal.App.4th 1, 4; see *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.) This, however, is not an appropriate case to exercise that discretion.

As discussed, in dependency proceedings involving Clyde in 2018 the juvenile court found Cristian had a significant history of drug use and was a current abuser of heroin and prescription medications. Cristian did not complete his case plan in that proceeding, and jurisdiction was terminated with Jessica being awarded sole physical and legal custody of Clyde with Cristian restricted to monitored visitation. In light of the findings and orders in that case, any professed concern by Clyde that the January 2021 finding unfairly brands him as an offending parent who abuses drugs to the detriment of his children is illusory. Moreover, notwithstanding the nonjusticiability of the jurisdiction finding as to Cristian, in the following section we evaluate—and affirm—the disposition orders he challenges on appeal, as we would if he were nonoffending. (Cf. *In re K.T.*, *supra*, 49 Cal.App.5th at p. 25 [considering whether juvenile court abused its discretion in ordering nonoffending father with whom child was placed to participate in a parenting course].)

2. *The Juvenile Court's Disposition Orders Were Well Within Its Broad Discretion To Protect Clyde and Bonnie*

We review the juvenile court's disposition orders, including for a parent as to whom no jurisdiction finding was made, for an abuse of discretion. (*In re K.T.*, *supra*, 49 Cal.App.5th at p. 25;

11

see *In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; see generally *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474 ["The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion"].)

Emphasizing he did nothing to precipitate the current dependency proceedings, which were initiated because of Jessica's use of fentanyl during her pregnancy with Bonnie, Cristian argues neither the drug abuse program nor the domestic violence program ordered by the juvenile court was necessary to protect the children. To the contrary, he contends, he had already participated in drug rehabilitation in 2012 or 2013 and claimed he had not used drugs since then. He also testified he had completed a domestic violence program in 2015 or 2016 and a parenting class while in jail.

Cristian provided no documentation to support his assertions regarding prior programming. Moreover, as the juvenile court explained, even if Cristian had participated in substance abuse rehabilitation and domestic violence counseling years earlier, in 2018 the juvenile court found Cristian was a current user of illegal drugs and had transported Clyde while under the influence of heroin, Cristian admitted when interviewed in December 2020 that he had been convicted and incarcerated in 2019 for child cruelty and some form of battery, and Jessica testified Cristian's jail sentence involved domestic violence—all of which indicated Cristian continued to have serious substance abuse and anger/violence issues. As discussed, dependency jurisdiction terminated in that proceeding in 2019 because the court believed (incorrectly, as it turned out) Jessica

12

could provide a safe home for Clyde, not because Cristian—who was limited to monitored visitation—had successfully dealt with his problems.  And, as the Department notes, Cristian's denial of any drug use after 2012 or 2013 and any issue of violence since 2015, notwithstanding the strong evidence to the contrary, reinforces the need for corrective programming under court supervision.  (See, e.g., *In re V.L.* (2020) 54 Cal.App.5th 147, 156 [parent's denial of domestic violence increases the risk of it recurring]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[d]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

Given Cristian's history and the children's young age, the juvenile court acted well within its discretion in requiring him to participate in substance abuse and domestic violence programs.

## DISPOSITION

The jurisdiction finding and disposition orders are affirmed.


PERLUSS, P. J.

We concur:



SEGAL, J.



FEUER, J.

13